SALLY MARIA · HOLLY, as Executrix of GEORGE HOLLY, Deceased, Respondent, *v.* EDWARD GIBBONS, Individually, and as Executor of RANSOM H. GIBBONS, Deceased, Appellant, Impleaded with Another.

1. EQUITY — CREDITOR'S ACTION TO COMPEL EXECUTOR TO SELL REAL ESTATE UNDER POWER OF SALE FOR PAYMENT OF DEBTS. Where the personal estate of a decedent is insufficient to satisfy his debts a creditor may maintain an action in equity to establish his claim and to compel an executor having a testamentary power to sell designated real estate "for the purpose of paying debts," to sell the same and apply the proceeds to the extinguishment of the debt.

2. ACKNOWLEDGMENT BY EXECUTOR PREVENTS RUNNING OF STATUTE OF LIMITATIONS. It is not only the right, but the duty of the executor to discharge the debt, and his acknowledgment thereof, by making payments thereon from time to time, prevents the running of the Statute of Limitations, the principle of the rule that prevents an executor from reviving a debt against the estate of his testator which is barred by the statute having no application to a case where he performs his legal duty in keeping it in force.

3. FORMER ADJUDICATION DISMISSING PROCEEDING FOR AN ACCOUNTING NOT A BAR. · A former adjudication of the Surrogate's Court, the only effect of which was to dismiss the creditor's petition for an accounting, containing the statement that the proceeding was "barred by the Statute of Limitations," does not constitute a final adjudication upon the validity of his claim and is not a bar to the maintenance of the action.

4. FAILURE TO LEGALLY SERVE NON-RESIDENT DEVISEE WITH PROCESS FATAL TO JUDGMENT. A devisee under the will, of the real estate directed to be sold, having an interest therein subject to the exercise of the power of sale, is a necessary party to such an action; and where the devisee who was a non-resident was made a party defendant, but by reason of a non-compliance with section 439 of the Code of Civil Procedure was never legally served with process and did not appear, a judgment in plaintiff's favor must be reversed.

5. ERRONEOUS DIRECTION OF SALE BY REFEREE. A direction in the judgment that the real estate be sold through a referee is improper in the absence of an allegation or finding that the executor was unfit or without capacity to execute the power of sale.

*Holly* v. *Gibbons,* 67 App. Div. 628; reversed.

(Argued November 17, 1903; decided December 1, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered January 7, 1902, modifying and affirming as modified a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

The plaintiff's testator was the administrator of Betsy Ann Gibbons, who was the widow of Ransom H. Gibbons, and, as a creditor of the latter's estate, upon a promissory note given to his intestate by her husband in his life-time, for the sum of $2,800, payable one year after date and carrying interest at five per cent, and in his capacity as administrator, he brought this action, with the object of procuring the payment of the claim. He joined as defendants with Edward Gibbons, the executor of Ransom H. Gibbons, the said Edward Gibbons, individually, and Sally Maria Peck, who were the only children of the testator, and the demand of the complaint, variously, is that the executor render an account of his proceedings; that the individual defendants shall be jointly charged with the amount of the testator's debt; that the executor be compelled to exercise the power of sale in the testator's will; that the court shall order a sale of the real estate left by the testator, and that the proceeds of the sale shall be applied in payment of the debt. The answer, admitting that the personal estate was exhausted and is not available for the payment of debts, puts in issue the liability upon the note and sets up, in various ways, the bar of the Statute of Limitations. The answer, also, pleads, in bar of the action, a previous adjudication in the Surrogate's Court. The plaintiff's testator recovered judgment; by which it was, in substance, adjudged that the note was a valid and existing claim against the estate of the testator; that the amount due upon it was recoverable against Edward Gibbons, as executor and individually; that a sale of the real estate of the testator should be made, at public auction, under the direction of a referee therein appointed for the purpose; that from the proceeds of such sale the debt should be paid and that any deficiency should be made good by the defendant,

Edward Gibbons, individually. Upon appeal to the Appellate Division, in the third department, the judgment was modified "by striking therefrom that part thereof relating to the collection of any deficiency after the sale of the real estate from Edward Gibbons, individually, and, as so modified, affirmed." The defendant, Edward Gibbons, individually and as executor, appealed to this court. After the determination by the Appellate Division, the original plaintiff died and the present plaintiff and respondent, as his executrix, was substituted in his place and stead by order.

Testator's will, after making provision for his wife during her life, by the third clause, gave to his son Edward a certain farm, called the "Huyck farm," "to have and hold forever, unless said Edward shall die without legal issue and in that case the same property to my daughter, Sally Maria, and her heirs." By the fourth clause, he authorizes his executor to sell a certain farm, called the "Jay Gibbons farm," "to the best advantage for the purpose of paying debts and for the interest of my daughter," and, further authorizing his executor to sell the house and lot on which he resided, continues, by saying, "and after the real estate is sold and the debts paid and if there is not over $4,000, I give to my daughter the said $4,000, but if there is over $4,000 I direct that my son and daughter to each share alike in the overplus and in case of my daughter's death to go to her heirs." He, then, appoints his son Edward as the executor of his will. The trial judge made findings; in which he found that the testator paid the interest upon the note, which he had given to his wife, down to the time of his death, in 1885; that his executor acknowledged the validity of the note and paid the interest thereon, until the death of the testator's widow, in 1893; that, when the original plaintiff, her administrator, presented the note to the executor, the latter admitted the validity of the note, promised to pay the same and requested, rather than to have a sale of the real estate, that it should remain as it was; that in such request the plaintiff acquiesced and that the executor paid the interest upon the note down to March,

1897.   He found that the testator left no personal property;
except about two hundred dollars, which had been expended
in paying funeral expenses and some small debts of the estate;
that the executor had sold the house and lot, in which the
testator resided and which were referred to in the fourth
clause of the will, and had applied the proceeds, in 1895,
upon the principal and interest of the note and that, in Sep-
tember, 1899, he informed the original plaintiff that he was
forbidden to make further payments upon the note and,
therefore, should decline to pay the same, or any part of
it.   Thereupon, as it is further found, this original plain-
tiff instituted a proceeding before the surrogate of Albany
county, in which, as a creditor of Ransom Gibbons' estate, he
sought to compel the executor to account as such; that the
executor, in his answer in that proceeding, denied that the
petitioner was a creditor and set up the bar of the Statute of
Limitations, whereupon the surrogate made a decree, adjudg-
ing as follows: "That more than six years and eighteen
months having elapsed since the appointment of said Edward
Gibbons, as executor, this proceeding to compel the executor
to account is barred by the Statute of Limitations," and order-
ing "that the petition should be dismissed."   Upon these
facts the conclusions of law followed, upon which the judg-
ment was entered in favor of the plaintiff.

The further fact is to be noticed that Mrs. Peck, the
daughter of the testator and who was joined as a defendant,
did not appear in the action and that she was a non-resident
of the state, upon whom service of the summons and complaint
had been made without the state, pursuant to an order to that
effect.

*Walter E. Ward* for appellant.   There is no law or prac-
tice in this state to support the judgment entered as to the
sale of the real estate.   (*Platt* v. *Platt*, 105 N. Y. 488; *Hogan*
v. *Kavanaugh*, 138 N. Y. 417; *Long* v. *Long*, 142 N. Y.
545.)   There was no legal service of the summons upon the
defendant Sally Maria Peck, the court never obtained juris-

diction of her and the judgment is absolutely void as to her, and consequently void as to the sale of the real estate. (Code Civ. Pro. § 438; *MacOrakin* v. *Flanagan*, 127 N. Y. 493; 141 N. Y. 174; *Orr* v. *Currie*, 14 Misc. Rep. 74; *Greenbaum* v. *Dwyer*, 4 Civ. Pro. Rep. 276; *Peck* v. *Cook*, 41 Barb. 549.) The judgment entered cannot be sustained against the defendants Edward Gibbons and Sally Maria Peck individually as devisees. (Code Civ. Pro. §§ 1837, 1860; *Clift* v. *Moses*, 116 N. Y. 144.) The cause of action against the defendants as devisees under the will, to charge them with the value of the estate received by them individually, is barred by the six years' Statute of Limitations, which began to run three years after the granting of letters testamentary, or nine years in all. (*Adams* v. *Fassett*, 149 N. Y. 61; *Burnham* v. *Burnham*, 27 Misc. Rep. 106; *Mead* v. *Jenkins*, 95 N. Y. 31.) The debt being barred by the Statute of Limitations as to the devisees, the executor has no right to sell the real estate for the payment of the debt. (*Butler* v. *Johnson*, 111 N. Y. 204.) The note was outlawed as to all parties long before the commencement of this action. (*Balz* v. *Underhill*, 19 Misc. Rep. 215; *Bloodgood* v. *Bruen*, 8 N. Y. 362; *Schultz* v. *Morette*, 146 N. Y. 137; *Willis* v. *Sharp*, 115 N. Y. 396; *Platt* v. *Platt*, 105 N. Y. 488.) The former adjudication in the Surrogate's Court is a complete bar to the maintenance of this action. (*Pray* v. *Hegeman*, 98 N. Y. 351; *Hyland* v. *Baxter*, 98 N. Y. 610; *Matter of Denton*, 103 N. Y. 607; *Reich* v. *Cochran*, 151 N. Y. 122; *Park Hill* v. *Herriot*, 41 App. Div. 324; *Nichols* v. *McLean*, 101 N. Y. 526; *Keller* v. *Vil. of Mount Vernon*, 23 App. Div. 46; *Hollister* v. *Abbott*, 31 N. H. 442; *Hudson* v. *Nashua*, 62 N. H. 591; *Harris* v. *Harris*, 36 Barb. 88.)

*John H. Gleason* for respondent. The claim in suit was never barred by the Statute of Limitations. (*McLaren* v. *McMartin*, 36 N. Y. 88; *Heath* v. *Grennell*, 61 Barb. 190; *Murdock* v. *Waterman*, 145 N. Y. 55; *Mack* v. *Anderson*, 165 N. Y. 532; *Matter of Kendrick*, 107 N. Y. 108; *Matter*

*of Miles*, 170 N. Y. 75.) The action is properly brought and can be maintained against Edward Gibbons alone, as the executor and individually as sole devisee of the deceased debtor. (2 R. S. [9th ed.] 1807, § 96 ; *Matter of Gantert*, 136 N. Y. 106 ; *Haight* v. *Brisbin*, 96 N. Y. 132 ; *Moncrief* v. *Ross*, 50 N. Y. 436 ; *Vonbaskerck* v. *Herrick*, 65 Barb. 257 ; *Stewart* v. *Hamilton*, 37 Hun, 19 ; Code Civ. Pro. §§ 1815, 1843–1853, 1860, 2759, subd. 4 ; *Cunningham* v. *Parker*, 146 N. Y. 29 ; *Wood* v. *Wood*, 26 Barb. 356 ; *De Crano* v. *Moore*, 30 Misc. Rep. 303 ; *Adams* v. *Fassett*, 149 N. Y. 61 ; *Cole* v. *Tyler*, 65 N. Y. 73.) The Surrogate's Court had no jurisdiction to determine the petitioner's claim, and its decree dismissing the petition is not a bar to this action. (Code Civ. Pro. § 2722 ; *Matter of Wagner*, 119 N. Y. 28 ; *Matter of Callahan*, 152 N. Y. 320 ; *Matter of Miles*, 170 N. Y. 75 ; *Matter of Clauss*, 16 App. Div. 34 ; *Matter of Edmonds*, 47 App. Div. 229 ; *Matter of Kirby*, 36 Misc. Rep. 312 ; *Koehler* v. *Hughes*, 148 N. Y. 507 ; *Rosenstein* v. *Fox*, 150 N. Y. 354 ; *Randall* v. *N. Y. El. R. R. Co.*, 149 N. Y. 211 ; *Matter of Gregory*, 21 N. Y. S. R. 871 ; *Matter of Sargent*, 42 App. Div. 301.) Sally Maria Peck has no interest, vested or contingent, either in the land devised, or in that directed to be sold, and she is not a necessary party to this action. (*Stokes* v. *Weston*, 142 N. Y. 433 ; *Washbon* v. *Cope*, 144 N. Y. 287 ; *Nelson* v. *Russell*, 135 N. Y. 137 ; *Quackenboss* v. *Kingsland*, 102 N. Y. 128 ; *Van Derzee* v. *Slingerland*, 103 N. Y. 47 ; *Matter of N. Y., L. & W. R. R. Co.*, 105 N. Y. 89 ; *Delafield* v. *Barlow*, 107 N. Y. 535 ; *Salisbury* v. *Slade*, 160 N. Y. 278 ; *Chamberlain* v. *Chamberlain*, 43 N. Y. 432 ; *Hauselt* v. *Patterson*, 124 N. Y. 349.)

GRAY, J. The judgment, which the plaintiff now has, validates the claim against the testator's estate and authorizes the disposition of the real estate devised by the will, by a sale, for the purpose of satisfying the amount found to be due. In so far as the plaintiff seeks the equitable intervention of the court to compel the exercise by the executor of the power of sale

contained in the will, the action is clearly maintainable; assuming that the debt has been conclusively established. The testator expressly empowered his executor to sell the "Jay Gibbons farm," "for the purpose of paying debts and for the interest of his daughter," in order that, the debts being thus paid, the residue of the proceeds of sale of that and of the other real estate mentioned in the clause might be given to the latter. The power of sale thus given was imperative and imposed a duty on the executor, the performance of which might be compelled in equity for the benefit of the creditors, or the daughter. (2 R. S. 734, sec. 96.) The debts were not made a charge upon the testator's real estate; but a power to sell certain portions of it for their payment was given, the execution of which in nowise depended upon the will of the grantee of the power. Hence, the remedy of the creditor, upon the failure to exercise the power of sale, was by application to a court of equity. (*Matter of Gantert,* 136 N. Y. 106.) The sale of the real estate for the payment of the debts is not, as it is argued, to be effected, solely, through proceedings provided for in the Code of Civil Procedure. Section 2759 provides that a decree directing the disposition of real property, in a case where, 'under section 2750, the creditor of the decedent has instituted a proceeding for that purpose, can be made only where the property directed to be disposed of is not subject to a valid power of sale for the payment of the debts. (Subdiv. 4.)

The action, therefore, was maintainable, if the claim of the creditor was an enforceable one, and, as to that, the appellant argues that the executor could not, by the acknowledgment of the debt, prevent the Statute of Limitations from running. He argues, in effect, that the principle of the rule, which prevents an executor from reviving a debt against the estate of his testator which is barred by the statute, applies, equally, to his right to keep a debt alive. I perceive no force in such an argument; nor am I aware of any authority in reported cases, which would support it. The demand of the plaintiff was upon an obligation of the testator, subsisting at the time of

his death and for which his estate was concededly liable. It was the right and it was the duty of the executor to discharge the indebtedness upon the obligation, either from the personal estate, or, if that was insufficient, by the exercise of the power of sale given to him by the will. There is a plain distinction between the right of an executor to revive an indebtedness against his testator's estate, which had been extinguished by law, and his right to acknowledge, and to keep in force, a subsisting obligation, by making payments from time to time upon the principal of the debt, or by way of keeping down the interest. (*McLaren* v. *McMartin*, 36 N. Y. 88; *Butler* v. *Johnson*, 111 id. 204.) In the one case he, in effect, creates an indebtedness; while, in the other, he is performing a moral obligation and is executing a duty recognized by law.

It is, further, objected by the appellant that a former adjudication in the Surrogate's Court was a bar to the maintenance of this action. In my opinion, that is not the effect of the surrogate's decree referred to. All that decree effected was, as it states, the dismissal of the creditor's petition. The statement, which it contained, that "the proceeding to compel the executor to account is barred by the statute of limitations," was not a final adjudication upon the validity of the petitioner's claim. It was the conclusion of the surrogate that, by reason of the lapse of time, the executor could not be compelled to account in such a proceeding. Whether the surrogate was correct or not, in that respect, is not material. He, in effect, nonsuited the petitioner, by dismissing his petition, and, in so doing, has complied with certain provisions of the Code of Civil Procedure. By section 1822, it is provided that, where an executor rejects a claim against the estate, "unless a written consent shall be filed by the respective parties with the surrogate that said claim may be heard and determined by him upon the judicial settlement of the accounts of said executor, * * * the claimant must commence an action for the recovery thereof," etc. By section 2722, if a petition is presented to the Surrogate's Court by a creditor, praying for a

decree directing the executor to pay his claim, it is provided that the surrogate must dismiss the petition, " without prejudice to an action or an accounting," where the latter files a written answer, setting forth facts, which show " that it is doubtful whether the petitioner's claim is valid and legal and denying its validity or legality." Obviously, if the proceeding were one, in which the executor was called upon to render his account by a creditor, the validity of whose claim is either expressly denied, or is shown to be doubtful, the result must be the same, as to the surrogate's jurisdiction. I do not think we can say that the filing of a petition by a creditor, and of an answer thereto by the executor denying the validity of a claim, was equivalent to the filing of the written consent required by the statute. The fact that the claim was disputed deprived the surrogate of jurisdiction to determine its validity and to decree its payment. (*Matter of Callahan*, 152 N. Y. 320.)

It is, further, argued that this action cannot be maintained against the devisees individually. The order of the Appellate Division struck out any recovery against the executor, individually, of any deficiency judgment and there was no judgment at all against Mrs. Peck. Whether the judgment is maintainable for the sale of the real estate devised to Edward Gibbons is somewhat doubtful; inasmuch as the averments of the complaint and the proofs do not seem in sufficient compliance with the provisions of the Code with reference to an action against devisees and Mrs. Peck was not brought into the action. (Code, secs. 1843, 1846, 1849, 1851.) But, as the judgment must be reversed and a new trial ordered, for the failure to bring in Mrs. Peck, we will not discuss this question.

The serious feature of this case, and one which requires the reversal of the judgment, is that Mrs. Peck, though made a defendant by name, was never brought into the litigation by a legal service upon her of the summons. The order for the service of the summons upon her was not founded upon the affidavit, which section 439 of the Code requires to be made. Indeed, the respondent conceded, in open court,' that there

was no such legal service; but he says that Mrs. Peck has "no interest, vested or contingent, in the land devised, or in that directed to be sold, and that, therefore, she is not a necessary party to the action." This contention seems rather extraordinary, in view of the allegations of the complaint; to the effect, not only, that Mrs. Peck is a devisee under the will and holds as such, but that the payments made by the executor upon the note and the delay by him in the sale of the real estate were with her knowledge and consent, and in view of the findings, which recited the facts of a personal service upon her of the summons and complaint and of her knowledge of, and consent to, the executor's acts. If we might disregard these matters, as not necessarily conclusive upon the respondent, we, still, are confronted with the fact that Mrs. Peck did have an interest in the estate of the testator and in the enforcement of the power of sale contained in the will, which made her a necessary party to the action; without whose presence the court would acquire no jurisdiction to render any decree, which would affect her legal, or equitable, interests. Under the third clause, by which the "Huyck farm" was given to the testator's son, "unless he should die without legal issue," in which case it was to go to his daughter, Mrs. Peck, she took no interest; because the son survived the testator and the estate had vested in him. Under the fourth clause, however, which empowered the executor to sell the "Jay Gibbons farm" and the residence, for the purpose of paying debts and applying the surplus to the testator's daughter, her interests are very clear and substantial. As one of the two heirs at law of the testator, she had an interest in such real estate; which was subject, of course, to the exercise of the power of sale. Having such, her interest in any legal proceeding, wherein it was sought to compel a sale for the purpose of paying claims against the testator's estate, was very substantial. She was very much concerned, by reason of her legal and equitable interests, that such claims should be satisfactorily and legally established, as obligations of the testator which were actually subsisting against his estate. It

34

cannot, truthfully, be said that Mrs. Peck had no interest,
which could be injuriously affected by the result of this liti-
gation, and, therefore, within those rules which govern the
judgment of a court of equity, she should have been brought
into the litigation. Courts of equity observe a fundamental
principle concerning parties, that all persons, who are inter-
ested, directly or indirectly, in the subject-matter and in the
relief to be granted by decree, should be brought into the
suit. When it appears that their rights might be affected
thereby, and they are capable of being made parties, a court
of equity should not proceed to decide the case without them.
(Story's Equity Jurisprudence, sec. 1526; Pomeroy's Equity
Jurisprudence, sec. 114.)

In the absence of Mrs. Peck as a party to the action, the
court did not obtain jurisdiction to render a judgment for the
sale of the testator's real estate.

It was, also, quite unnecessary to the judgment to direct a
sale of the real estate through a referee. I am not aware of
any authority in the law for such procedure. It not having
been charged, or found, that the executor was unfit, or without
capacity to execute the power of sale, the judgment of the
court should have directed him to effect the sale.

For the reasons I have given, I advise that the judgment
appealed from should be reversed and that a new trial should
be ordered, with costs to abide the event.

HAIGHT, VANN, CULLEN and WERNER, JJ., concur; BART-
LETT, J., votes for reversal on the ground that Mrs. Peck had
such an interest in the "Jay Gibbons farm" as rendered her
a necessary party defendant; PARKER, Ch. J., not sitting.

Judgment reversed, etc.