## WALBRIDGE v. BROOKLYN TRUST CO. et al.

(Supreme Court, Appellate Division, Second Department. March 17, 1911.)

1. PARTIES (§ 92*)—DEMURRER—GROUNDS.

   A complaint, which mentions a defendant in the caption only, and which asks no relief against him, is demurrable.

   [Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 150–152; Dec. Dig. § 92;* Pleading, Cent. Dig. § 494.]

2. EXECUTORS AND ADMINISTRATORS (§ 138*)—POWER OF SALE—ACTION TO COMPEL EXERCISE OF POWER—PARTIES.

   A will gave testator's widow the family residence and one-third of his personalty in satisfaction of her dower and thirds. After various other bequests, he provided for conversion and distribution of the residue among his children. The will empowered the executors to manage the estate until such conversion. Another clause provided for the widow's support until the distribution by way of advancement. *Held*, that the widow's executor is not a proper party to a suit to compel the executors to sell the lands and distribute the proceeds.

   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 571; Dec. Dig. § 138;* Powers, Cent. Dig. §§ 84–98.]

3. EXECUTORS AND ADMINISTRATORS (§ 138*)—POWER OF SALE—NATURE.

   A direction to executors to convert the residue of testator's estate into money for distribution, as soon as practicable, is imperative, though it gives some discretion as to the time of sale, as to which the executors' judgment, exercised in good faith, is conclusive.

   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 571; Dec. Dig. § 138;* Powers, Cent. Dig. §§ 84–98.]

4. EXECUTORS AND ADMINISTRATORS (§ 138*)—POWER OF SALE—COMPULSORY SALE.

   Courts will compel exercise of an imperative power of sale under a will only when the executors in whom it is vested have failed in their duty.

   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 571; Dec. Dig. § 138;* Powers, Cent. Dig. §§ 84–98.]

5. WORDS AND PHRASES—"PRACTICABLE."

   "Practicable" means capable of being performed or effected (citing Words and Phrases, vol. 1, p. 529).

6. EXECUTORS AND ADMINISTRATORS (§ 138*)—POWER OF SALE—COMPULSORY EXERCISE—"AS SOON AS PRACTICABLE"—"PRACTICABLE."

   An imperative power in executors to sell the residue of the estate "as soon as practicable * * * having in mind the interest of all concerned," does not warrant its compulsory exercise though three years have elapsed, though the land could be sold "without difficulty," and though the executors have refused to sell to beneficiaries at the "fair and reasonable value" of the property; the will permitting purchase at the market value at testator's death as valued by the executors.

   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 571; Dec. Dig. § 138;* Powers, Cent. Dig. §§ 84–98.

   For other definitions, see Words and Phrases, vol. 1, p. 529; vol. 8, p. 7582; vol. 6, pp. 5483, 5484.]

7. PLEADING (§ 214*)—ADMISSION BY DEMURRER—CONCLUSIONS.

   Conclusions of law are not admitted by demurrer.

   [Ed. Note.—For other cases, see Pleading, Cent. Dig. § 527; Dec. Dig. § 214.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Kings County.

Action by Francis E. Walbridge against the Brooklyn Trust Company, Anna H. Walbridge's executor, and others. From an interlocutory judgment overruling a demurrer, defendant named appeals. Reversed, and demurrer sustained.

Argued before JENKS, P. J., and BURR, CARR, WOODWARD, and RICH, JJ.

William N. Dykman (Francis L. Archer, on the brief), for appellant.

Robert H. Wilson, for respondent.

JENKS, P. J. The plaintiff, a beneficiary under the will of Olin G. Walbridge, deceased, seeks judgment that directs the executors forthwith to sell and to dispose of the real estate and to distribute the proceeds, pursuant to a testamentary power of sale conferred upon them and to the directions of that instrument. The Brooklyn Trust Company, as executor of Anna H. Walbridge, a party defendant, appeals from an interlocutory judgment that overrules its demurrer that the complaint does not state sufficient facts to constitute a cause of action. The learned counsel for the respondent in his arguments oral and written concedes that a cause of action is not pleaded as against this defendant, and that no relief is asked against it; but he contends that it cannot demur inasmuch as it was made a defendant merely out of precaution, in that it is or may be directly or indirectly interested in the estate.

[1] The sole mention of this defendant is in the caption of the complaint. Anna H. Walbridge is not mentioned in the complaint save that the will is annexed thereto and she is named therein. There is no allegation that she survived the testator or that she is dead. As there is no mention of the demurrant in the complaint, consequently there is no allegation that it was appointed the executor of Anna H. Walbridge or qualified as such, or that it has any interest or asserts any interest whatever in the real estate in question. I think that the complaint is demurrable as to this defendant. Paxton v. Patterson, 26 Abb. N. C. 389, 10 N. Y. Supp. 303, 12 N. Y. Supp. 563; Makepeace v. Davis, 27 Ind. 352; Bliss on Code Pleading, § 414.

[2] But let us admit the contentions of the respondent, "If the widow were not dead, and if the trust company had not been appointed her executor, it would not have been made a defendant under such title," and that "the inferences are sufficient on demurrer." Such admission would but mean that the plaintiff sufficiently charged that Anna H. Walbridge was dead, and that this demurrant was the executor under her will. Does it then follow that this demurrant is or may be directly or indirectly interested in the subject-matter of the action and so is a proper party? The testator first makes provision for Anna H. Walbridge, his wife, by devise of the family residence, by bequests of its furniture and equipment, and of one-third of all of his personal estate. This provision is declared to be in full satisfaction and recompense of and for her dower and thirds. Various bequests to divers persons follow, and then, as to the "rest, residue and

remainder" of the estate, there is a provision for conversion and distribution that is invoked by this action. The proceeds thereof are given and bequeathed specifically to the children of the testator, of whom the plaintiff is one. The learned Special Term was of opinion that, as the widow's estate might now derive an income from the real estate, her executor might properly be heard. This conclusion is drawn from construction of the eleventh clause of the will, of which the part germane reads as follows:

"And in the meantime and until such real estate be sold, converted or divided, I authorize and empower my said executors and trustees or the survivors or survivor of them to lease the same for such time and upon such terms as they may think advisable. Until an actual division, conversion and distribution of my estate as named, I hereby authorize and empower executors and trustees aforesaid and the survivors or survivor of them to manage and control the same, and I hereby authorize them to retain as an investment the securities which may come to their possession as part of my estate, and to sell the same if they deem it advisable and reinvest the proceeds and generally to invest my personal estate and the proceeds of sale of real estate, and to receive the interest and income therefrom, and also to receive and collect the rents from my real estate and from said rents to pay the taxes, assessments, insurance and repairs and until the actual division, conversion and distribution of my estate to pay quarterly after my death the net proceeds of all my estate to my wife, my children, the widow and children of my deceased son, and the trustees, in proportion to their several interests hereunder."

The learned Special Term, however, quoted as the premises for its conclusion only that part of this excerpt which begins "to receive and collect the rents from my real estate." Its conclusion presents the peculiar feature that one who is provided for out of the personalty alone (exclusive of the residence), and for whom such provision is declared exclusive, and who consequently had no interest whatever in the realty which was to be converted for the benefit of the children exclusively, was nevertheless to receive a part of the rents thereof until the sale. There is no apparent temporary reason for this, inasmuch as by the third clause of the will adequate provision is made by way of *advancement* for the widow's support and maintenance out of her one-third of the personalty until it is appraised and divided. The entire provision refers to the actual division, conversion, and distribution of "my estate"; it authorizes the executors to manage and control it, to retain securities, to sell them, to reinvest the proceeds, and to invest the personal estate, thus specifically referring to that kind of property, and then follows directions as to the real estate. The final clause again refers to "my estate" without distinction, and the quarterly payments are to be made of the net proceeds of "all my estate * * * in proportion to their several interests therein." There is no other provision as to the proceeds of the personalty, until the actual division, conversion, or distribution; the provision made does not refer to the real estate, but to "all my estate," and the payments are regulated by the interest of the beneficiaries.

But, as we have seen, the widow has no interest in the real estate. What proportionate part, then, could be paid to her out of its income? I think that the right construction of this clause, so far as the widow is concerned, is that until actual division, conversion, and distribution she was to receive the net proceeds, not from the real estate,

but according to her interest which was in the personal estate exclusively save as to the residence. This provision is entirely distinct from the advancements referred to in the third clause of the will. There was an actual "division, conversion, and distribution" as to her when she received the one-third of the personal property pursuant to that clause. It will not be assumed that this was not done. There is no suggestion that the will has not been carried out (save as to the powers of sale), or that the widow has not accepted the provision made for her thereunder. For these reasons, even if we give effect to every inference insisted upon by the respondent so as to read into the complaint an allegation that Anna Walbridge is dead and the defendant the Brooklyn Trust Company is her executor, and thereupon we read the will of Olin G. Walbridge, I fail to find any justification for the joinder of this demurrant as a defendant.

Two cases are cited to us: Holly v. Gibbons, 176 N. Y. 520, 68 N. E. 889, 98 Am. St. Rep. 694, and People's Trust Co. v. Gomolka, 129 App. Div. 12, 113 N. Y. Supp. 49. Each declares the rule that those whose rights might be affected should be made parties in an equity suit. But in the first case named the party discussed had an interest in the real estate which was subject to sale for the benefit of the creditors, in that she was a devisee thereof. And in the second case it was held that in a foreclosure action the assignor of the bond and mortgage who had received payments after the assignment was a proper party, and moreover it was pointed out that the complaint charged that the defendant had or asserted some lien or interest accrued subsequent and subordinate to the mortgage.

[3, 6] The action itself mainly rests upon the eighth clause of the will, which reads as follows:

"All the rest, residue and remainder of my real estate and personal property, wheresoever situated and of whatever kind or nature of which I may die seized and possessed, I direct my executors and trustees, the survivors or survivor of them as soon as *practicable* after my decease, having in mind the interest of all concerned, to *convert into* money."

If there were not a sale at some time, the scheme of the testator would be defeated, and hence the power is imperative even though a discretion is reposed in the executors as to the time of sale. Haight v. Brisbin, 96 N. Y. 132; Real Property Law, § 137. Therefore the executors are bound to exercise their discretion, in furtherance of a sale. Haight v. Brisbin, supra; Perry on Trusts (6th Ed. [Howe's]) §§ 510, 511. They could not stand inert upon the plea that there should be no sale at all; they could not disregard an obligation to sell upon the plea that although it is practicable it should not be made at all, as it was not for the interests of all concerned. It is their duty to seek affirmatively for such time when a sale is practicable, considering in addition thereto, but subordinate in its effect, the interest of those to be benefited thereby. But the judgment of the executors, when so exercised in good faith, is conclusive. Haight v. Brisbin, supra, and authorities cited.

[4] And it is only upon the showing of shortcomings of the executors that the court will "put them in motion" or act in their stead. Haight v. Brisbin, supra; Ireland v. Ireland, 84 N. Y. 321; Hancox

v. Meeker, 95 N. Y. 536; Mason v. Jones, 3 Edw. Ch. 498; Williams on Executors, vol. 3, p. 308; Tempest v. Lord Carmoys, L. R. 21 Ch. Div. 578; Perry on Trusts (6th Ed.) §§ 510, 511. The expression in Hancox v. Meeker, supra, is "violated their duty." And in Ireland v. Ireland, supra, the court, per Earl, J., say:

"But when a trustee, with the powers conferred upon this trustee, is acting, in administering his trust, within the limits of a fair and reasonable discretion, a court of equity cannot intervene except for very peculiar reasons calling for the exercise of its jurisdiction."

The plaintiff cannot prevail by convincing the court to judgment that the time for a sale is at hand because that would in effect make a new will, in that the judgment to be exercised is not that of the executors. The function of the court is not in the first instance substitutional, but supervisory. As the time of sale in this case is not definitely prescribed, we must seek the intention of the testator upon consideration of the entire will with reference to the purposes thereof. Egerton's Administrator v. Conklin, 25 Wend. 224–238. The discretion is expressed in the words "as soon as practicable after my decease, having in mind the interest of all concerned."

[5] "Practicable" means capable of being performed or effected. Cent. Dict.; Webster; Worcester. In Streeter v. Streeter, 43 Ill. 165, the court say:

"'Practicable' is that which may be done, practiced, or accomplished; that which is performable; feasible."

Comparing the word with "immediately," the court further say:

"The former contemplates action much less speedy than the latter, and the intervention of many things not contemplated, it would seem, by the use of the latter word. They are not convertible words, for, while 'immediately' includes 'practicably,' the latter does not include the former; and they are not synonymous."

"'As soon as practicable,' as used in a contract requiring that it should be performed as soon as practicable, is practically synonymous with 'speedily.' It does not, however, require that the contract should be performed directly, and perhaps not within a reasonable time, but as soon as conditions warranted under all the circumstances. Duncan v. Topham, 8 C. B. 225, 230." Words and Phrases Judicially Defined, vol. 1, p. 529.

In Reedy v. Smith, 42 Cal. 245, the court in discussion of this word say:

"It must be ascertained from the nature of the contract, the difficulties to be overcome, and the importance to the plaintiffs of an early completion. It is impossible to give a definition of the word which would apply to all cases. Each case will be governed by its own circumstances."

In Wooters v. I. & G. N. R. R. Co., 54 Tex. 294, the court distinguishes the word as used in a contract from "possible," and as contemplating other elements than the mere point of time—"with reference to all of the circumstances under which it (the work) was to be done."

The phrase "interest of all concerned" relates to those who under the will are to be benefited by the sale and the consequent distribution. That the testator contemplated that the period of sale might be defer-

red for some considerable time is indicated in the eleventh clause of the will, wherein it is provided:

"And in the meantime and until such real estate be sold, converted or divided, I authorize and empower my said executors and trustees or the survivors or survivor of them to lease the same for such time and upon such terms as they may think advisable."

And there is also the further significant provision in that clause that until the actual divison, conversion, and distribution there must be the quarterly payments which I have heretofore discussed. From the complaint it appears that the will was probated in June, 1907. This action was begun in September, 1910. That lapse of time of itself would not necessarily make against the executors. If the will had not reposed any discretion, there would have been no arbitrary standard for measuring a reasonable time; but it would have been determined by the facts. When there were no modifying facts, the court has said that 18 months might serve as a just standard. Matter of Weston, 91 N. Y. 502–510. The delay in this case, where there is discretion, is but little more than double that period. Of course, the mere lapse of time in itself may move the court. Thus, where there was a discretion as to the time of sale, the mere lapse of 20 years did so. Wilcox v. Quinby (Gen. Term, 2d Dep., per Cullen, J.) 20 N. Y. Supp. 5[1].

I now consider the pleading. The plaintiff complains that:

"All of said unsold real estate is situated in the boroughs of Manhattan and Brooklyn, * * * and could be sold without difficulty, and no reasons exists why the same should not be sold."

We may assume that it could be "sold without difficulty"; but that is very far from the statement of any fact that indicates that these executors were lax in their duty of determining that a sale is "practicable * * * having in mind the interest of all concerned," so that the court should compel them to sell or should act in their stead. The allegation that "no reasons exists why the same should not be sold," taken as a conclusion from the prior statement, is disposed of by my comments thereon; otherwise it must be regarded as a conclusion of law without the support of any facts alleged, and therefore insufficient. Wills' Gould on Pleading, p. 200, and notes; Bliss on Code Pleading, §§ 206–210; Knapp v. City of Brooklyn, 97 N. Y. 520.

[7] Such conclusions are not admitted by a demurrer. Park & Sons Co. v. Nat. Druggists' Ass'n, 175 N. Y. 1, 67 N. E. 136, 62 L. R. A. 632, 96 Am. St. Rep. 578.

The eighth allegation of the complaint is the only other to be considered. This is:

"That the defendant executors refused to sell one of said parcels of real estate to this plaintiff for the sum of two hundred and sixty thousand dollars ($260,000), which was the fair and reasonable value of said property, and is value as fixed by said executors."

---

1 Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 65 Hun, 621.

This alleged· default is referable to the ninth clause of the will, which reads as follows:

"If any of the residuary legatees desire to purchase any of the personal property or real estate owned by me, they may do so at its current market price at the time of my death, as valued by my executors and trustees, the survivors or survivor of them, and the same shall be charged against their respective shares or interests, as money paid to them by the executors and trustees, the survivors or survivor of them in accordance with the provisions of this will."

But this allegation is no indication of any shortcoming on the part of the executors. The *plaintiff* did not have the right to purchase the parcel for the fair and reasonable value, but "at its current market value" at the time of the testator's death, "as valued by my executors or trustees." There is no statement that $260,000 was this *current market value as valued by the executors.* And the statement that such sum "is value as fixed by said executors" is not tantamount to such an allegation. We know (Rice on Evidence, vol. 1, p. 18) that such a valuation was considered and the point decided adversely to the plaintiff in Matter of Walbridge, 198 N. Y. 234, 91 N. E. 590. The court then said:

"The appellant should have asked the executors to determine the value of the property as of the time of testator's death, and, if that valuation was satisfactory, demanded a sale to him at that price."

And the remittitur was amended so as not to prejudice the plaintiff. 198 N. Y. 598, 92 N. E. 1106.

Perry on Trusts, supra, says:

"But, while the court cannot interfere with a discretion honestly exercised, a party interested in property subject to the discretion of a trustee has a right to institute a bill for a discovery of the property, and also of all the acts of the trustee, and the reasons for the acts, in order that it may be seen whether the discretion of the trustee is honestly exercised or not. And, if the administration of the trust is thus rightfully brought within the jurisdiction of the court, the power may be required to be exercised under the eye of the court, though the exercise of it must still remain in the discretion of the trustee, and not in that of the court."

This jurisdiction is recognized in Collister v. Fassitt, 163 N. Y. 281–290, 57 N. E. 490, 79 Am. St. Rep. 586, where the court cites with approval the language of Cortabadie v. Cortabadie, 6 Hare, 410.

I advise that the interlocutory judgment be reversed, and the demurrer sustained, with costs, with leave to the plaintiff to plead over within 20 days upon the payment of costs. All concur.