American Tri-Ergon Corporation and Others, Appellants, v. Ton-Bild Syndikat, A. G., and Others, Defendants, Impleaded with Max Goldberg and Others, Respondents.*

First Department, April 13, 1934.

* See, also, 145 Misc. 344.

*David L. Podell* of counsel [*Benjamin Reass, Daniel G. Rosenblatt* and *Felix S. Cohen* with him on the brief; *Hirsh, Newman, Reass & Becker,* attorneys], for the appellants.

*Louis Nizer* of counsel [*Arthur B. Krim* and *Robert S. Benjamin* with him on the brief; *Phillips & Nizer,* attorneys], for the respondents.

UNTERMYER, J.   Upon motion by the defendants Leo Brecher, Max Goldberg and Associated Cinemas of America, Inc., for judgment on the pleadings, the complaint has been dismissed as against them.

The complaint alleges that previous to October, 1926, Tri-Ergon, A. G., a Swiss corporation, was the owner of various patents, inventions and trade-marks known as "Tri-Ergon Process," relating to motion pictures and including both "sound on film" and "sound on disc."   On October 14, 1926, Tri-Ergon, A. G., granted an option to William Fox for an exclusive license to the Tri-Ergon process and the products thereof with respect to "sound on film" within the United States, Canada, Mexico and the West Indies, which option was exercised by Fox on June 27, 1927.   On September 4, 1928, an agreement, subsequently assigned to American Tri-Ergon Corporation, a New York corporation, was executed by Tri-Ergon, A. G., and William Fox, consummating the sale to Fox of the Tri-Ergon process and the products thereof with respect to "sound on film" within the contract territory.

In November, 1926, Tri-Ergon, A. G., granted to Tri-Ergon Musik, A. G., a Swiss corporation, license rights to certain of the

Tri-Ergon processes for the sole purpose, it is alleged, of producing disc records. On August 30, 1928, Tri-Ergon Musik, A. G., with the written consent of Tri-Ergon, A. G., entered into a contract with Ton-Bild Syndikat, A. G., a German corporation, permitting Ton-Bild to utilize the Tri-Ergon process for the production of sound films. There was expressly excluded, however, from the license so granted to Ton-Bild Syndikat, A. G., the use of the Tri-Ergon process and the resulting products for the United States, Canada, Mexico and the West Indies, these rights having previously been acquired by William Fox. At the time of the execution of this contract, it is alleged that Ton-Bild Syndikat, A. G., was informed of the existence of the rights of William Fox. On June 6, 1930, the rights of William Fox under the contract above referred to were assigned to American Tri-Ergon Corporation and the rights of Tri-Ergon, A. G., and Tri-Ergon Musik, A. G., were assigned to the plaintiff Tri-Ergon Holding, A. G.

By agreement made in March, 1929, Ton-Bild Syndikat, A. G., and Klangfilm G. m. b. H., also a German corporation, granted to each other reciprocal licenses of the patents under which each was operating. It is charged that in disregard of the rights of the plaintiffs, Ton-Bild Syndikat, A. G., has conspired with others, including the defendant Klangfilm G. m. b. H., to engage in unlawful competition with the American Tri-Ergon Corporation within the contract territory. Pursuant to this conspiracy these defendants, and the defendant Universum Film, A. G., have manufactured in Europe and distributed in the United States, Canada, Mexico and the West Indies apparatus and inventions, including films and talking pictures produced by the Tri-Ergon process. This they have done not only through subsidiaries organized in the United States, but through distributors, including the defendants Brecher, Goldberg and Associated Cinemas of America, Inc.

The complaint also contains a second cause of action which, in substance, repeats the allegations of the first, and further alleges that the defendants in violation of an express provision of the license agreement between Tri-Ergon Musik, A. G., and Ton-Bild Syndikat, A. G., have failed to designate the various products, processes, patents and inventions used and distributed by them by the name " Tri-Ergon," thereby depriving the plaintiffs of the benefits of the advertising value which would result from the use of that name.

The principal relief demanded is that the defendants be restrained from manufacturing, distributing, exhibiting or using any of these patents, inventions or films within the contract territory; that the defendants be required to account to the American Tri-Ergon

Corporation for any profits derived from such manufacture, distribution, exhibition or sale of any of such patents, inventions or films used, sold or distributed within the contract territory; that the defendants be restrained from using, distributing, exhibiting, leasing or selling anywhere any films, talking pictures or processes which depend wholly or in part upon Tri-Ergon inventions unless the name " Tri-Ergon," either alone or in combination, be used in the designation thereof.

The action is maintained by American Tri-Ergon Corporation as assignee of the party entitled by contract with Tri-Ergon, A. G., to the exclusive right to manufacture, sell and distribute the Tri-Ergon process and films produced thereby within the United States, Canada, Mexico and the West Indies. It is maintained by Tri-Ergon, A. G., as the party, and by Tri-Ergon Holding, A. G., as assignee of the party, with whom the defendant Ton-Bild Syndikat, A. G., contracted to abstain from distribution in that territory. The court at Special Term granted the motion of the defendants Brecher, Goldberg and Associated Cinemas of America, Inc., to dismiss the complaint upon the ground that none of these defendants is in a contractual relation with any of the plaintiffs and that the complaint does not sufficiently allege that they had knowledge that the distribution by them of Tri-Ergon films within this territory constituted a violation of the plaintiffs' contractual rights. The court for that reason held that these defendants were not liable for inducing the breach of the plaintiffs' contracts. (*Lamb* v. *Cheney & Son*, 227 N. Y. 418, 421.) It further held that " if the complaint is to rest upon the theory that the moving defendants, with whom plaintiffs have no contractual relationship, have unlawfully exploited the patents of the plaintiffs in this country to their damage, the cause of action is one for infringement of the plaintiffs' rights under patents " of which the State court has no jurisdiction. (*Wise* v. *Tube Bending Machine Co.*, 194 N. Y. 272; *Couch Patents Co.* v. *Berman*, 137 App. Div. 297.)

These conclusions might indeed be tenable if this were an action at law and the only relief demanded was the recovery of money damages. It might then be true that the moving defendants would not be liable to the plaintiffs, except for an infringement of patent rights, if unwittingly they had contracted for the distribution of films and talking pictures in violation of the contract between the plaintiffs and other of the defendants. We do not decide that question at this time because the allegations of the complaint are such, and the relief demanded against other defendants is such, that the moving defendants are necessary, or at least proper, parties to the action. (See *Delcambre* v. *Delcambre*, 210 N. Y.

460.) It is alleged in the complaint that in violation of the plaintiffs' rights certain of the defendants have heretofore and now continue to "sell and contract for the sale" within the contract territory of films manufactured by the Tri-Ergon process, with distributors, including the moving defendants. Again, it is alleged that certain of the defendants have "solicited and obtained contracts" with numerous distributors, including the moving defendants, "for the distribution and exhibition of films and talking pictures throughout the aforesaid territories" in violation of the plaintiffs' contractual rights. As a part of the relief it is demanded that the defendants be restrained from continuing to violate the contracts which accord to American Tri-Ergon Corporation the exclusive right to manufacture, sell and distribute these films and talking pictures in this territory. Assuming that the plaintiffs are not entitled to such relief against those defendants who acted without knowledge of the plaintiffs' rights, nevertheless if this relief is granted against those defendants who stand in a contractual relation with the plaintiffs it will necessarily prevent performance by them of the contracts which, it is alleged, they have made with Brecher, Goldberg and Associated Cinemas of America, Inc., for the distribution of the films. It is difficult to see how the court could enter a decree which would thus affect the rights of the moving defendants unless those defendants were before the court. If they were not parties to the action it would seem necessary, before any judgment could be entered which would result in abrogating their contracts, to make them so. (*Holly* v. *Gibbons*, 176 N. Y. 520.) The complaint, therefore, should not have been dismissed as to them, even though the plaintiffs may not show themselves to be entitled to any affirmative relief as to them.

If the complaint states a cause of action against the moving defendants on this theory, no question of the jurisdiction of the State court can arise, as the court at Special Term appears to have recognized. The action is one to enforce, against certain of the defendants, contracts relating to the distribution of apparatus, devices and films made by the Tri-Ergon process. The fact that that process is protected in whole or in part by patents does not affect the character of the suit. It remains an action to enforce contractual rights, of which the State courts have complete jurisdiction. Any question that may arise concerning the validity of the patents under which these devices and films are produced is merely incidental to the enforcement of these rights. (*Pratt* v. *Paris Gas Light & Coke Co.*, 168 U. S. 255; *Hartell* v. *Tilghman*, 99 id. 547; *Becher* v. *Contoure Laboratories*, 279 id. 388; *New Era Electric Range Co.* v. *Serrell*, 252 N. Y. 107.)

The order appealed from should be reversed, with twenty dollars costs and disbursements, and the motion denied, with ten dollars costs.

MARTIN and O'MALLEY, JJ., concur; FINCH, P. J., and MERRELL, J., dissent and vote for affirmance.

MERRELL, J. (dissenting). This action was brought by plaintiffs against some nineteen named defendants to restrain the defendants and each of them during the pendency of the action, and permanently, from manufactu ring, distributing, exhibiting, using, or in any manner aiding or abetting in the use thereof, any of the patents, inventions, experiences or the products or improvements thereof, specified in the contract between plaintiff Tri-Ergon, A. G., and William Fox made September 4, 1928, and in a contract executed August 30, 1928, between Tri-Ergon M usik, A. G., and Ton-Bild Syndikat, A. G., or in any manner breach ing said agreements or interfering with the terms or intentions thereof within the territorial confines of the United States an d its territories and possessions, Canada, Mexico and the West Indies , and requiring the defendants and each of them to account for and tu rn over to the plaintiff American Tri-Ergon Corporation the proceeds and profi ts derived and received by said defendants from the manufacture, sa le, leasing, distribution and exhibition of said films, patents, inventions, etc., made, used or distributed within the sai d contract territory, and the benefits of which were claimed to be expressly reserved to said William Fox and the plaintiff American Tri-Ergon Corporation, as his assignee. Plaintiffs also ask that the defendants and each of them be enjoined and restrained from using, distributing, exhibiting, leasing or selling or in any way aiding in the use thereof, anywhere, of said films, talking motion pictures, etc., dependent wholly or in part upon Tri-Ergon inventions, unless the name Tri-Ergon, either alone or in combination with one referring to the defendant Ton-Bild Syndikat, A. G., be used in the designation thereof, and directing that all advertising matter and all instruments referring to the processes and product specified be destroyed, and directing that the defendants and each of them hereafter in connection with the use of said films, etc., which depend in whole or in part upon Tri-Ergon patents, use a name or title which shall designate same as a Tri-Ergon process or product.

In the brief of the appellants an attempt is made to bolster up a clearly insufficient complaint by claiming that said complaint alleges that the respondents " conspired " with the other defendants to invade the plaintiffs' contractual rights, or that the respondents had " knowledge " of the contract between Tri-Ergon, A. G., and

Ton-Bild, and the contract between Tri-Ergon and William Fox. The complaint, however, may be searched in vain to find any allegations in support of such contention in the brief of the appellants. The justice presiding at Special Term below in a very concise opinion, felt constrained to grant the motion of the defendants, respondents, for judgment on the pleadings because of the absence in the complaint of allegations directly connecting the defendants, respondents, with any conspiracy or charging them with any knowledge of the contracts claimed to have been in existence between Tri-Ergon, A. G., and William Fox. In their complaint the plaintiffs allege that they are the owners of certain patented processes, and have the exclusive right by contract to the exploitation thereof, and their product, in the territory of the United States, Canada, Mexico and the West Indies. The complaint sets forth the various contracts and assignments whereby the original owner of the various improvements relating to the talking motion picture films and the owner of various patents therefor in Europe, North America and elsewhere, assigned to William Fox, and subsequently to the American Tri-Ergon Corporation, which Fox formed for that purpose, the exclusive rights to the use of their improvements in said contract territory of the United States, Canada, Mexico and the West Indies. Plaintiffs also allege that Tri-Ergon, A. G., also granted to the defendant Ton-Bild Syndikat the exclusive rights to the exploitation of its patented processes and their product in specified European territory. It is further alleged that Tri-Ergon Musik, whose rights have since been assigned to the plaintiff Tri-Ergon Holding, A. G., with the express consent and ratification of the plaintiff Tri-Ergon, A. G., granted to one of the defendants, Ton-Bild Syndikat, the exclusive license to the exploitation of the Tri-Ergon processes for certain European territory. The territorial rights previously transferred to Fox, now vested in the plaintiff American Tri-Ergon Corporation, were expressly excepted from the rights granted to said defendant Ton-Bild Syndikat. The plaintiffs further allege that the defendant Ton-Bild Syndikat, in violation of its contract with the plaintiff Tri-Ergon, A. G., has invaded the territory previously allocated to Fox, and failed to designate the product of plaintiffs' processes by the name " Tri-Ergon." Plaintiffs in their complaint set forth two alleged causes of action against all of the defendants; that in violation of the terms of the contract between plaintiffs and Ton-Bild Syndikat and of the contract between Tri-Ergon, A. G., and William Fox the defendants have invaded the territory previously allocated to said Fox and have failed to designate the products of plaintiffs' processes by the name of " Tri-Ergon." In the first cause of

action the plaintiffs set forth the numerous acts of Ton-Bild Syndikat and the other defendants whereby they allege various of the talking picture improvements or photoplays produced as a result thereof were distributed in the United States, and further set forth in the complaint the " plan and scheme and conspiracy," for the furtherance of the alleged invasion of the United States territory, of certain of the defendants, but the defendants, respondents, herein are not mentioned in connection with such allegation.

As a second cause of action the plaintiffs allege that in violation of the specific covenant contained in the contract between the plaintiffs and Ton-Bild Syndikat the defendants distributed the aforesaid inventions and photoplays without designating the same by the name of " Tri-Ergon."

The only references in the complaint to the respondents Associated Cinemas of America, Inc., and Max Goldberg, are that they are alleged to have purchased from the defendants Ton-Bild Syndikat, Klangfilm and Universal Film, films and devices expressly reserved to the plaintiff American Tri-Ergon. In paragraph 36-c of the complaint it is alleged that the respondent Goldberg aided in the maintenance of certain theatre corporations for the express purpose of facilitating this distribution in the United States territory and to enable Ton-Bild to enter into unlawful competition within said territory with said plaintiff American Tri-Ergon Corporation. In the 44th paragraph of the complaint all of the defendants are alleged to have exhibited and distributed various films transported to the United States " in direct violation of the license agreement * * * to Ton-Bild Syndikat, A. G.," and in the following paragraph of the complaint it is alleged that said defendants, by reason of such exhibition and distribution, received large sums of money " rightfully and within the intent of the several contracts, licenses and agreements " belonging to the plaintiffs. There is no allegation in the complaint that either of the respondents was a party to such alleged unlawful arrangement. There is no allegation contained in the complaint that the defendants, at any time, entered into any contract relationship with the plaintiffs, and there is no allegation that the respondents, at the time of distributing or exhibiting the designated photoplays within the United States, or at the time of failing to designate the same by the name " Tri-Ergon," knew of the contract between the plaintiffs and Ton-Bild Syndikat and between Tri-Ergon, A. G., and Fox. There is no allegation that the respondents conspired among themselves or with any other defendants to commit any of the acts enumerated. The allegations of the complaint do not set forth any common-law cause of action in tort or contract against the respondents. There is no direct

allegation to be found in the complaint that either of the respondents conspired to or was a party to any such contracts or had any knowledge of their existence.

In granting the motion of the defendants, respondents, for judgment on the pleadings, the Special Term held, I think correctly, that the complaint failed to state a cause of action for conspiracy to commit an actionable wrong. There is no fact showing any criminal conspiracy alleged. (*Kellogg* v. *Sowerby*, 190 N. Y. 370.) Section 580 of the Penal Law, subdivision 5, does not create any cause of action against the defendants, respondents. Only by reason of wrongful acts committed by the conspirators resulting in injury to plaintiffs does there arise a cause of action. In support of the determination of the Special Term the cases of *Miller* v. *Spitzer* (224 App. Div. 39, 40); *Moskin* v. *Lyden* (200 id. 304) and *Green* v. *Davies* (182 N. Y. 499) were cited. The complaint was also held faulty in so far as it is claimed that a cause of action is therein set forth for the tort of malicious interference with the contract rights of others. There is no allegation of any malicious inducement on the part of the defendants to cause a breach of such contract to the damage of plaintiffs. The Special Term held that so far as the moving defendants were concerned the complaint is defective in that it failed to allege that the defendants had knowledge of the existence of the contract between Tri-Ergon, A. G., and William Fox, and of the contract between Tri-Ergon, A. G., Tri-Ergon Musik, A. G., and Ton-Bild Syndikat, A. G. The court, furthermore, found that there was no allegation that the defendants maliciously induced a breach of said contracts with the plaintiffs to the plaintiffs' damage. An examination of the complaint fully sustains the position that such allegations of knowledge of and malicious interference with such contract are essential. (*Hornstein* v. *Podwitz* 254 N. Y. 443; *Campbell* v. *Gates*, 236 id. 457; *Posner Co.* v. *Jackson*, 223 id. 325; *Goodman Bros., Inc.*, v. *Ashton*, 211 App. Div. 769.)

In paragraph 35 of the complaint the plaintiffs allege that after the execution of the agreement of August 30, 1928, between Tri-Ergon Musik, A. G., and the defendant Ton-Bild Syndikat, A. G., contrary to the express prohibitions therein contained and in disregard of the rights of said William Fox and of the plaintiffs and in violation of said agreement with Tri-Ergon Musik, A. G., and with the express intent and scheme of defrauding plaintiffs and depriving them of the benefits of their contracts and of the plan which had been devised, and with the unlawful purpose of invading the contract territory which had been exclusively assigned to said William Fox and plaintiff American Tri-Ergon Corporation, as his assignee, the defendant " Ton-Bild Syndikat,

A. G., *with others* entered upon a plan and scheme and conspiracy to engage in unlawful competition with said William Fox and plaintiff American Tri-Ergon Corporation, his assignee, within the contract territory so as to defraud the plaintiffs of the fruits of their contracts and the field of their activity." This is the only allegation to be found in the complaint that the acts of the defendants were under a plan and scheme of conspiracy to engage in unlawful competition to be found in the complaint. The complaint fails to connect either of the moving defendants with said conspiracy and, of course, they could not be connected therewith in the absence of any knowledge of the existence of said various contracts. The court held that if the complaint was to rest upon the theory that the moving defendants, with whom plaintiffs have no contractual relationship, have unlawfully exploited the patents of the plaintiffs in this country to their damage, then the cause of action is one for infringement of the plaintiffs' rights under the patents, as to which cause of action the Supreme Court of this State has no jurisdiction and the plaintiffs are relegated to the Federal courts for the relief which they seek. (*Wise* v. *Tube Bending Machine Co.*, 194 N. Y. 272; *Couch Patents Co.* v. *Berman*, 137 App. Div. 297.)

The plaintiffs, of course, by their complaint, allege ownership and the exclusive right of control over the alleged patented articles which the plaintiffs claim are being exploited in this country. The answers of the defendants Brecher, Goldberg and Associated Cinemas of America, Inc., by denials, put in issue all of the allegations of the complaint, including the allegation of ownership of the patents in question. Said defendants deny in their answer, either positively or of information sufficient to form a belief, as to each and every of the allegations contained in the complaint so far as the same apply to said defendants. The allegation of the complaint as to ownership of the patent rights is, therefore, put in issue and the claim of the appellants from the nature of the rights asserted and from the nature of the relief demanded affirmatively indicates that those claims involve a question of patent law. If so, the State courts have no jurisdiction to try the issues raised by the pleadings. The right of the plaintiffs, as alleged owners of the patents, to prevent their exploitation within the United States by a purchaser from a European licensee certainly involves interpretation of the extent of the patent monopoly conferred by the letters of the United States. The Court of Appeals in *Waterman* v. *Shipman* (130 N. Y. 301), as to infringement cases, stated the rule as follows: " An infringement, as applied to patents, is a violation of the exclusive right conferred upon the patentee. An adjudication that a certain act is an infringement necessarily requires the construc-

tion of the right and, by comparison of principles or processes, a determination as to its nature and extent. An action to prevent an alleged infringer from using the right, as patented, involves the existence or preservation of the monopoly granted by the patent and necessarily arises under the patent laws." Unquestionably, it seems to me, the exclusive rights of the plaintiffs under the patents which they claim to own necessarily arose under the patent law, and are, therefore, without the jurisdiction of the State courts. The rights of a holder of a limited geographical interest or the rights of a patentee who is granted a portion only of his monopoly to prevent invasion of prohibited territory, involves a patent question. Furthermore, the rights of a United States patentee to prevent others who may have purchased a patented commodity from licensed foreign owners from exploiting the same within the United States likewise raises a patent question. In *Victor Talking Machine Co.* v. *The Fair* (123 Fed. 424) the court stated: " If * * * the patentee had been suing * * * to restrain the defendants from using a part of his monopoly that had never been granted them," the case would be one arising under the patent laws of the United States, the Federal court stating: " A patentee may farm out such a part of the field of use as he pleases and retain the balance and * * * whoever, without permission, enters the reserved portion is an infringer.' In *New York Phonograph Co.* v. *Davega* (127 App. Div. 222) the plaintiff had a limited geographical exclusive license to manufacture and sell certain patented phonographs, similarly to the position of the plaintiff American Tri-Ergon Corporation in the present action. The defendant who purchased the assets of the patentee was manufacturing and selling patented phonographs within the contract territory in violation of the license between the plaintiff and the patentee. Following the general rule of law that one not a party to the contract cannot be held to its terms, the court decided in that case that the State court had no jurisdiction, and that whatever rights the plaintiff had involved a patent question. The Appellate Division wrote as follows: " We do not need to determine now what rights the plaintiff has under the patent laws or whether treated solely as an infringement suit the action can be maintained against the defendant, * * * for, as already shown, whatever rights the plaintiff has arise under the patent laws, unless there is some contract relation between the plaintiff and the defendant or his vendor. * * * A suit is none the less an infringement suit because it does not involve the validity of a patent. Such a suit may be brought by a licensee against the patentee; * * * in it rights arising under the patent laws are asserted and the construction of said laws, as well

as the construction, if not the validity, of the patent, is involved." In *Boesch* v. *Gräff* (133 U. S. 697) the United States Supreme Court considered the rights of a United States patentee to protect his rights against parties exploiting his patent in the United States after purchase from European licensees, a patent question. In that case the patent articles had been purchased from a European licensee of the owner and imported into the United States from a foreign country and sold here without the license or consent of the owner of the United States patent — a very similar situation to that of which the plaintiffs complain. The court was to consider the question whether the defendant was liable for infringement even though he had purchased the articles in a foreign country from a person authorized to sell them in that country. The United States Supreme Court held that the question before it specifically involved the determination of the extent of the patent monopoly and as to whether or not it was sufficient that the defendant had once paid tribute to the patentee by purchase from his accredited licensee.

I think the matter was correctly disposed of at Special Term below on the motion of the defendants, respondents, and that the order appealed from granting the defendants, respondents, judgment on the pleadings should be affirmed, with twenty dollars costs and disbursements to the defendants, respondents, against plaintiffs, appellants.

FINCH, P. J., concurs.

Order reversed, with twenty dollars costs and disbursements, and motion denied, with ten dollars costs.